IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

_____

UNITED STATES OF AMERICA,

               Plaintiff,

    vs.

JERALD ELMO BROBST,

              Defendant.

CR 06-55-M-DWM

FINDINGS & RECOMMENDATION
OF UNITED STATES
MAGISTRATE JUDGE

_____

    The Government has charged Defendant Jerald Brobst by indictment with receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2), possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), and forfeiture under 18 U.S.C. § 2253(a).  Defendant has since moved to suppress statements he made to Lake County Sheriff's Officers as they were executing a search warrant at his residence.  Chief Judge Donald W. Molloy has referred the motion to suppress to the undersigned for initial determination.  Pursuant to this referral, the undersigned held a suppression hearing on February 28, 2007.  Based on the evidence and testimony presented at the suppression hearing,

**IT IS RECOMMENDED** that Defendant's Motion to Suppress (dkt #20) be **DENIED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of the United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel on or before March 12, 2007.[1]

DONE and DATED this 5th day of March, 2007

   /s/ Jeremiah C. Lynch    
Jeremiah C. Lynch  
United States Magistrate Judge

### Discussion

### I. Factual Background

The Court makes the following factual findings based on the evidence and testimony presented at the suppression hearing.[2]  On July 11, 2006, the Lake County Sheriff's Office obtained a warrant to search Brobst's residence for child pornography.  No one was at the Brobst residence when Lake County Sheriff's Officers Detective Daniel Yonkin, Detective Kim Leibenguth, and Deputy Lance Ewers, arrived to execute the warrant.  The

---

[1] *United States v. Barney*, 568 F.2d 134, 136 (9th Cir. 1978) (the court need not give the parties the full ten day period set forth in 28 U.S.C. § 636(b)(1) within which to file objections).

[2] Only those facts relevant to the pending motion to suppress will be set forth here.

officers gained access to the house through a partially open window, and began their search.  Approximately seven to eight minutes later, the officers found several pages of printed material containing photographs of children engaged in sexual conduct.

At about this same time, Brobst drove up to the house with a friend.  Deputy Ewers, who was in uniform and wearing a sidearm, approached Brobst as he was exiting the vehicle and told him he "needed to come with me" into the house, or words to that effect.  Brobst's friend remained at the vehicle and Deputy Ewers followed Brobst up the flagstone walk and into the house.  Brobst entered through the front door into the kitchen area, and Deputy Ewers positioned himself just inside the door, which remained open.  From that vantage point, Deputy Ewers could keep an eye on Brost's friend and monitor the situation inside the house as well.[3]

Brobst encountered Detectives Yonkin and Leibenguth immediately upon entering the kitchen, which was open and adjacent to the living area.  The two detectives were dressed in street clothes, and Brobst assumed that they were armed.  Detective Yonkin promptly identified himself and advised Brobst

---

[3] Brobst's friend remained outside the residence.  It was not until Brobst was placed under arrest and escorted outside that his friend entered the residence to retrieve some personal belongings.

that they had a search warrant for his residence.  He showed Brobst the original warrant and gave him a copy.  The detective explained that they were looking for child pornography, and had located some under a filing cabinet in Brobst's bedroom.

Detective Yonkin asked Brobst whether the pornographic material was his, to which Brobst responded that the house was his, so the material must be his.  The detective then asked Brobst whether someone else lived in the residence, and whether the papers might belong to someone else.  Brobst indicated that no one else lived in the residence, and again stated that it was his house so the materials the detectives had found must be his.  At this point, Detective Yonkin advised Brobst that he was under arrest.  The entire encounter thus far, from the time Brobst entered the residence until the time he was placed under arrest, lasted between two and five minutes.  Just after Detective Yonkin placed him under arrest, Brobst asked if he could go look at some new shelving in his bedroom and was allowed to do so under officer supervision.  When Brobst returned to the kitchen area, Deputy Ewers handcuffed him, escorted him out of the house, and transported him to the Lake County Detention Center.

**II.  Analysis**

Brobst has moved to suppress all statements he made to the law enforcement officers at his residence on the day of the search.  He contends that, under the circumstances, he was in

custody at the time Detective Younkin engaged him in conversation and maintains the officers were required to advise him of his rights under *Miranda* before interrogating him.

It is well-established "that a person questioned by law enforcement officers after being 'taken into custody or otherwise deprived of his freedom of action in any significant way' must first 'be warned that he has a right to remain silent, that any statement he does make may be used against him, and that he has a right to the presence of an attorney, either retained or appointed.'" *Stansbury v. California*, 511 U.S. 318, 322 (1994) (*quoting Miranda v. Arizona*, 384 U.S. 436, 444 (1966)). A *Miranda* warning is thus required when there is a custodial interrogation by a law enforcement officer. *Miranda*, 384 U.S. at 444. Accordingly, for *Miranda* to apply, a suspect must be in custody and subject to interrogation. *Illinois v. Perkins*, 496 U.S. 292, 297 (1990). The Government in this case does not dispute that Detective Yonkin's questions constituted an interrogation, but argues Brobst was not in custody at the time and his statements were voluntarily given.

To determine whether a person is "in custody" for purposes of *Miranda*, "a court must examine all of the circumstances surrounding the interrogation, but 'the ultimate inquiry is simply whether there [was] a "formal arrest or restraint on freedom of movement" of the degree associated with a formal

arrest.'" *Stansbury*, 511 U.S. at 322 (citation omitted).  The court must thus "determine, based on the totality of the circumstances, whether 'a reasonable person in such circumstances would conclude after brief questioning [that] he or she would not be free to leave.'" *United States v. Beraun-Panez*, 812 F.2d 578, 580, modified by 830 F.2d 127 (1987).  The Ninth Circuit looks to the following factors to determine whether an individual is in custody for purposes of *Miranda*: "(1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual."  *United States v. Kim*, 292 F.3d 969, 974 (9th Cir. 2002) (citation omitted).

Turning to the first factor, this Court must assess the language Deputy Ewers used when summoning Brobst to the house.  According to Deputy Ewers, he approached Brobst in the driveway of the home and advised him that he "needed to come with me" into the house, or words to that effect.  Deputy Ewers' statement was more in the nature of a command than a request.  Because Brobst was effectively directed to enter his home by an armed and uniformed law enforcement officer, the first factor weighs in favor of finding that the subsequent interrogation was custodial.

Under the second factor, this Court is to evaluate the

extent to which Brobst was confronted with evidence of his guilt during his encounter with law enforcement.  When Brobst entered the house, Detective Yonkin promptly identified himself and provided Brobst with a copy of the search warrant.  He explained that they had located child pornography in one of the bedrooms, but did not display the material.  Detective Yonkin did not raise his voice and their exchange was polite. It is nevertheless clear that Detective Yonkin did confront Brobst with evidence of his guilt.  This too weighs in favor of finding that Brobst was in custody for purposes of *Miranda*.

The third factor requires that this Court evaluate the physical surroundings of the interrogation.  That Detective Yonkin interrogated Brobst in the familiar surroundings of his own home cuts against a finding of custody.  *See United States v. Ritchie*, 35 F.3d 1477, 1485 (10th Cir. 1994) (finding defendant not in custody where his "detention occurred on his own premises, primarily inside the living room of his own home," and recognizing that "'courts are much less likely to find the circumstances custodial when the interrogation occurs in familiar or at least neutral surroundings,' such as the suspect's home") (citations omitted).  While the familiarity of Brobst's surroundings thus suggests his interrogation was not custodial, equally if not more important than the familiarity of his surroundings "is the degree to which the [officers] dominated the

scene." *Sprosty v. Buchler*, 79 F.3d 635, 641-42 (7th Cir. 1996) (*citing United States v. Griffin*, 7 F.3d 1512, 1518 (10th Cir. 1993)). *See also, Beraun-Panez*, 812 F.2d at 582 (concluding that where the defendant "was effectively isolated" and "questioning occurred in a police-dominated atmosphere," the "physical surroundings support[ed] the conclusion that the interrogation was custodial").

    The officers in this case did not so dominate the scene inside Brobst's home as to render his brief interrogation custodial.  The two plain-clothes detectives who were present stood at a normal conversational distance from Brobst, while the lone uniformed officer positioned himself some feet away at the door.  Detective Yonkin only questioned Brobst for approximately two minutes, and at no point did he raise his voice, threaten Brobst, or coerce him to answer.  Brobst answered the detective's few questions promptly and without argument.  The officers did not restrict Brobst's movements in any way during these few minutes.  Brobst testified that the officers prevented him from moving freely about the house during the interrogation.  Detective Yonkin, however, testified credibly that he had finished questioning Brobst and placed him under arrest by the time Brobst asked to go into his bedroom and officer safety is what motivated the officers to supervise Brobst's movements.  The officers did not tell Brobst he was free to leave, but at the

same time they did not tell him he was *not* free to leave. Importantly, the entire interrogation between Brobst and Detective Yonkin was rather curt.  For these reasons, this Court finds that the atmosphere during the brief interrogation was not so police dominated that a reasonable person would have understood he was not free to leave.  This factor thus mitigates against a finding that Brobst was in custody for purposes of *Miranda.*

The fourth factor for this Court to consider with respect to the issue of custody is the duration of the detention.  The interrogation in this case was very brief, lasting only two minutes or so.  Detective Yonkin estimated that approximately two minutes passed from the time Brobst entered the home until he was placed under arrest.  Brobst likewise testified that Detective Yonkin questioned him for just a "few minutes," but estimated that ten to fifteen minutes may have elapsed from the time he entered the home until the time he was escorted to his bedroom. The photo log Detective Yonkin completed in conjunction with his search of Brobst's residence corresponds with his testimony that the events in the house were of short duration.  There is a nearly twelve minute period during which Detective Yonkin took no photos and all of the events in the house transpired.  During that short period, Detective Yonkin waited for Brobst to enter the house, spoke with and questioned him, placed him under

arrest, escorted him to the bedroom, and returned with him to the kitchen.  At that point, Deputy Ewers handcuffed Brobst and escorted him outside, and Brobst's friend came inside to retrieve his personal belongings.  All of these events transpired in less than twelve minutes.  This supports Detective Yonkin's assessment that the interrogation itself lasted only a couple of minutes.  Brobst's interrogation and encounter with the officers in his home was of far shorter duration than many found by other courts to be non-custodial in nature.  *See United States v. Badmus*, 325 F.3d 133, 139 (3rd Cir. 2003) (defendant not in custody during search of his apartment where agents advised him he was not under arrest and guns were not drawn, despite fact that there were half a dozen armed officers present, the search lasted for nearly three hours, and the defendant was not allowed to move freely about the apartment).

    Finally, this Court must consider the degree of pressure applied to detain Brobst during the interrogation.  The officers in this case used no physical pressure whatsoever to detain Brobst during the interrogation, and any psychological pressure was minimal.  The interrogation was extremely brief, and Detective Yonkin did not raise his voice or threaten Brobst in any way.  Brobst maintained in briefing that the three officers applied significant pressure, as evidenced by the fact that they would not allow him to walk freely in his own home without a

police escort.  As noted above, however, Detective Yonkin had finished questioning Brobst and placed him under arrest by the time they escorted him to his bedroom.  Because the degree of pressure officer applied to detain Brobst was minimal at most, this factor also suggests that Brobst's interrogation was not custodial.

On balance, three of the five factors relevant to the analysis weigh against finding that Brobst was in custody for purposes of *Miranda*.  Many courts have faced the question of whether a suspect is in custody for purposes of *Miranda* when questioned by law enforcement officers during the execution of a search warrant in the suspect's residence.  The circumstances in this case are more akin to those found by other courts to be non-custodial in nature.  *Compare United States v. Salyers*, 160 F.3d 1152, 1159-60 (7th Cir. 1998) (concluding that suspect was not in custody while officers executed search warrant at his home where he was not restrained, did not ask to leave, was not told he could not leave, and did not attempt to leave) *and United States v. Jones,* 933 F.2d 807, 810 (10th Cir. 1991)(defendant not in custody during search conducted by six FBI agents where defendant was not restrained, but was asked to remain in the living room) *with United States v. Mittel-Carey*, 456 F.Supp.2d 296, 306-07 (D. Mass. 2006) (defendant was in custody because the atmosphere in his residence was "entirely dominated" by FBI agents who woke the

defendant and his girlfriend up by banging on door, accompanied the defendant wherever he went during the search, did not tell defendant he was free to leave, separated the defendant from his girlfriend, and told him the evidence against him warranted a lengthy prison sentence); *United States v. Levinson*, 790 F.Supp. 1477, 1481-82 (D. Nev. 1992) (suspects in custody where law enforcement officers "rushed uninvited into their home" to execute search warrant, did not tell the suspects they could leave, and escorted them separately to interview with investigating agent).

For all of the above reasons, this Court finds that Brobst's freedom of movement was not restrained to the degree associated with a formal arrest and a reasonable person in his situation would have understood that he was free to leave.  This Court thus concludes that Brobst was not in custody for purposes of *Miranda* when he was questioned by Detective Yonkin, and recommends that Brobst's motion to suppress be denied.